## SOUTHERN PACIFIC COMPANY ET AL. V. MILLARD PATTERSON.

### No. 359.

1.   **Charge.**—It was proper to charge the jury, that if plaintiff was a passenger on defendant's railway, and with the knowledge and consent of defendant a conductor of the Pecos Bridge Company demanded fare of plaintiff for crossing said bridge, and which fare was paid to said conductor under compulsion of being ejected, and if the conductor in charge of said train knew that such unlawful demand (if it was unlawful) would be made on plaintiff, and knew plaintiff would be ejected, and so knowing

of the unlawful demand, by reason of his instructions refused to protect plaintiff from such unlawful demand, threats, and violence, to find for plaintiff; and it is not objectionable for leaving the question of the unlawful demand to be determined by the jury, because the bridge fare was shown to have been unlawful.

2. **Ultra Vires.**—Any transaction which would disable a corporation from performing its duties to the State is against public policy and void. Hence, a railroad can not make a valid sale or lease of any portion of its road, or of any property necessary to the operation of its road, without the consent of the Legislature.

3. **Same—Demanding Higher Rate for Travel than Allowed by Law.**—The appellant had no power to make on its right of way an improvement, and thereby create the right to demand more than the lawful rate per mile for travel over it, and passengers on the line had the right to be carried over the bridge at the statutory rate, without extra fare for crossing it.

4. **Aggravating Claim for Damages.**—A passenger upon a train, knowing that an unlawful claim for fare will be exacted of him, can not by his own acts aggravate his claim for damages from such demand when exacted. See example.

APPEAL from El Paso. Tried below before Hon. A. M. WALTHAL, Special Judge.

*Davis, Beall & Kemp*, for appellants.—1. It was error in the charge to leave to the jury the determination of the lawfulness or unlawfulness of the acts of William O'Rourke in demanding and collecting of plaintiff the fifty cents bridge fare. Rogers v. Broadnax, 24 Texas, 542; Abram v. Railway, 18 S. W. Rep., 321; Railway v. Ford, 53 Texas, 371; Railway v. Mackie, 71 Texas, 493; Harrison v. Fink, 42 Fed. Rep., 787; 9 Am. and Eng. Ry. Cases, 348; 18 Id., 339; 40 Id., 666.

2. Plaintiff's ticket was a contract, or 1000-mile ticket, sold at a reduced price, with the stipulation, "Not good over Pecos bridge," and the jury should have been instructed to find for defendants. Wooters v. Railway, 54 Texas, 298; Railway v. Henry, 84 Texas, 683; Railway v. Perry, 81 Texas, 469; Williams v. Railway, 82 Texas, 553; Mosher v. Railway, 127 U. S., 390; 35 Minn., 203; 62 Md., 95; 63 N. Y., 101; 64 Mo., 464; 36 Conn., 287; 40 Iowa, 45; 25 Ohio St., 70.

3. It was the duty of plaintiff to pay the fare. He must use reasonable care to prevent the aggravation of damages; and the court should have charged that plaintiff was not entitled to recover the enhanced damages that plaintiff brought upon himself by his own acts, and which contributed to his injury. Pullman Car Co. v. McDonald, 21 S. W. Rep., 945; Railway v. Head, 15 S. W. Rep., 504; Jones v. George, 61 Texas, 362; Railway v. Cole, 66 Texas, 562; Railway v. Neil, 19 S. W. Rep., 963; Railway v. Pierce, 47 Mich., 276; Hutch. on Carr., secs. 580, 809; Fredericks v. Railway, 38 Mich., 342; Peabody v. Railway, 26 Pac. Rep., 1053; Railway v. Rhodes, 25 Fla., 40; Pullman Car Co. v. Read, 75 Ill., 125.

4. Exemplary damages were not warranted by the evidence. 1 Suth. on Dam., p. 823–826; Dillingham v. Russell, 73 Texas, 47; Railway v. Johnson, 85 Texas, 161; Railway v. Garcia, 70 Texas, 207; Railway v. Moore, 69 Texas, 157; Hays v. Railway, 46 Texas, 272.

5. That the verdict for exemplary damages is excessive and disproportionate to the actual damages as found. Railway v. Tel. Co., 69 Texas, 278; Willis v. McNeil, 57 Texas, 478; Tynburg v. Cohen, 76 Texas, 416; Railway v. Nichols, 9 Am. and Eng. Ry. Cases, 364; Belknap v. Railway, 49 N. H., 358; Rogers v. Henry, 32 Wis., 331; Railway v. Ashcroft, 48 Ala., 33; Collins v. Railway 12 Barb., 492; Walworth v. Pool, 9 Ark., 394; Packerd v. Bates, 38 Ill., 40; McNeil v. Lancaster, 17 Miss., 570.

*Peyton F. Edwards* and *Buckler & Martin*, for appellee.—1. The charge of the court as given was correct. Railway v. Morris, 67 Texas, 699; Thomas v. Railway, 101 U. S., 71; Pierce on Rys., 496; Taylor on Priv. Corp., 131, 305; Mora. on Corp., 485, 490.

2. The collection of the bridge toll was unlawful and unauthorized, and plaintiff had a right to refuse its payment, regardless of the consequences. 1 Suth. on Dam., 150; 71 Texas, 491; Schwiniger v. Raymond, 83 N. Y., 192; Haysler v. Owen, 61 Mo., 270; Grim v. Mann, 11 Ill., 522; Waters v. Brown, 44 Mo., 304; Smith v. Railway, 38 Iowa, 518; Railway v. Ward, 16 Ill., 522; Flynn v. Trask, 12 Allen, 550; Priest v. Nichols, 116 Mass., 401; Gardener v. Smith, 7 Mich., 410.

3. Exemplary damages were recoverable in this case, because the bridge was either the property of defendant or under its control and management, and its scheme to extort from its passengers the bridge toll was fraudulent, wanton, willful, and unlawful; and where a carrier's conduct is willful, wanton, or capricious, even though it may not be unlawful, exemplary damages are recoverable. 3 Suth. on Dam., secs. 937–950; Heim v. McCaughn, 32 Miss., 17; Railway v. Lyon, 123 Pa. St., 140; Graham v. Railway, 66 Mo., 536; Railway v. Brooks, 57 Pa. St., 339; Goddard v. Railway, 57 Me., 217; Quigley v. Railway, 11 Nev., 350.

JAMES, CHIEF JUSTICE.—The appellee brought this suit to recover damages, actual and exemplary, for requiring him to pay the sum of fifty cents as fare over the Pecos bridge. Plaintiff purchased at El Paso a 1000-mile ticket, for $25, over the Galveston, Harrisburg & San Antonio Railway lines, it being a contract signed by plaintiff, and among other provisions it had written upon it in legible letters, "Not good over Pecos bridge," and also providing, that no agent or employe of any of the lines named on the ticket should have power to

alter, modify, or waive in any manner any of the conditions named in the contract.

Plaintiff left El Paso for San Antonio to meet his wife, who was returning from Kentucky, and was informed by the conductor that the ticket would not be good over the Pecos bridge, that he would have to pay a fare over the bridge, and plaintiff told him he would not do it. The conductor said something about putting plaintiff off the train, and he told the conductor that he could afford to be put off the train if the company could. Plaintiff was carried over the bridge during the night without paying fare and without molestation.

On the return to El Paso, and when a short distance out from San Antonio, the conductor tore out plaintiff's fare to Sanderson, the end of his run, a point beyond the bridge, and told the plaintiff he would have to pay fifty cents fare to cross the bridge. Plaintiff told him he had heard of that before and had made up his mind not to pay it. The conductor offered to receive the bridge fare and deliver it to the bridge conductor during the night, as the train arrived at the bridge during the night, so that plaintiff would not be disturbed. This was not satisfactory to plaintiff.

It seems there was a person known as the "bridge conductor," whose function was to collect fifty cents fare from each passenger on trains of defendant crossing this bridge, except officers and employes, and passengers who held tickets from foreign roads, and to these last named the train conductors would deliver bridge tickets without cost to them. The bridge conductor would, where the train was bound west, board it at Del Rio, and collect the bridge fare from those not in the sleepers, and from those in the sleepers the train conductor would take the fares before bed-time, and for their accommodation have it ready for the bridge conductor on approaching the bridge. The bridge conductor claimed to be an employe of the Pecos Bridge Company, and to have control of the bridge. The railway conductor confirmed this, and disclaimed having control of trains while on the bridge, under instructions from his company.

The railway conductor had instructions from his company that a collector of the Pecos Bridge Company would collect the fifty cents toll from passengers over ten years of age, and half fare from those under that age; to allow the bridge conductor to collect the bridge tolls, and to stop the train at the latter's orders at or on the bridge; and to issue free of charge bridge tickets to passengers holding foreign road tickets, and to receive the toll from such passengers on the sleepers who were willing to pay same to him rather than be disturbed at night by the bridge conductor; and to allow the bridge conductor to board the train to collect bridge fares, and when at the bridge to obey the orders of the bridge conductor and not interfere with him in the collection of the fare or in the ejection of passengers for nonpayment thereof.

About twelve miles from the bridge, the bridge conductor, who had come upon the train to collect bridge fares, came into the sleeper where plaintiff and his wife were sleeping, unbuttoned the curtains and shook plaintiff, and woke him up and asked for his bridge fare. Plaintiff declined to pay it, and had the conductor called and demanded protection of him. The conductor said his company had instructed him to have nothing to do with the matter, and that plaintiff would have to pay the fare or be put off the train. Also, that if the fare was not paid the train would be detained there until morning, and the United States mail would be delayed, and plaintiff would be prosecuted for detaining the mail. Plaintiff then said if that was the only trouble he would just go to sleep, and so closed the curtains and lay back in the berth. Presently the bridge conductor, who was all this time sitting on the outside, called out and asked the plaintiff if he was going to pay that fifty cents. Plaintiff remarked, that he thought they said they were going to keep the train there all night. Then the bridge conductor replied he would not do that, but would put plaintiff off the train, and took hold of plaintiff. Plaintiff then asked the bridge conductor to write a statement that he had collected of plaintiff fifty cents bridge fare under threats of putting him off the train, which the bridge conductor did. A conversation ensued, and after awhile the conductor got up and took hold of plaintiff, and plaintiff handed him the half dollar, and took the receipt. Plaintiff then resumed his slumbers, and was not disturbed any more.

At the time of the occurrences in this case the line of the Galveston, Harrisburg & San Antonio Railway Company extended from El Paso to San Antonio, and was operated by the Southern Pacific Company.

In the month of March or April, 1892 (as near as the evidence places it), the line of this railway was changed a distance of several miles to connect with and run across the bridge known as the Pecos bridge, extending across the Pecos River, a distance of something over a mile.

This Pecos bridge appears to have been solely for railway use, and was erected by a company known as the Pacific Improvement Company, during the years 1891 and 1892, and was opened for traffic by connection with defendant's line of railway in March or April, 1892.

The bridge appears to have been constructed upon a right of way of the defendant, the Galveston, Harrisburg & San Antonio Railway Company, and at or about the time said bridge was opened for traffic by connection with said railway line, as aforesaid, viz., on April 15, 1892, the Galveston, Harrisburg & San Antonio Railway Company, executed to the said Pacific Improvement Company a deed for the space covered by the bridge, as follows:

"Defendants introduced in evidence a deed executed by the Galveston, Harrisburg & San Antonio Railway Company to the Pacific Improvement Company, on the 15th day of April, 1892, conveying, in

consideration of $550 in cash, the following described property, situated in the county of Val Verde, in the State of Texas, to wit: Beginning at a point on the Pecos River bridge, the same being the center of the channel span of said bridge, extending westward the full width of the right of way of the railroad company to a point 3878 feet, and extending eastward from the center of said channel span of said Pecos River bridge the full width of said right of way, a distance of 3302 feet, together with all the rights, privileges, and appurtenances to the same." This deed is signed by J. Kruttschnitt, vice-president Galveston, Harrisburg & San Antonio Railway Company.

At or about this time (date not disclosed in record) the Pacific Improvement Company conveyed the bridge, etc., to the Pecos Bridge Company by deed as follows:

"Also a deed from the said Pacific Improvement Company, a corporation organized under the laws of the State of California, to the Pecos Bridge Company, a corporation organized under the laws of the State of Colorado, in consideration of the sum of $600,000, payable as follows: $400,000 thereof in the first mortgage 5 per cent bonds of the Pecos Bridge Company, and $190,000 in the capital stock of said company, and $10,000 in cash, conveying the following described property: The railroad bridge constructed by the party of the first part across the Pecos River, in Val Verde County, Texas, and approaches thereto, from a stake or post erected in the ground easterly from the said river, marked 'G' on one side and 'P' on the other, to a stake or post in the easterly side of said river with similar marks, together with the ties and rails laid by the party of the first part upon the said bridge and approaches thereto between the points aforesaid; and also all the appurtenances to said bridge and approaches." This deed is signed by the Pacific Improvement Company, by C. P. Huntington, A. and A., and by W. L. Brown, second assistant secretary Pacific Improvement Company, with the seal of said company.

*Opinion.*—The first error assigned is that the following charge was erroneous:

"The court erred in the following portion of the charge to the jury: 'If the jury believe from a preponderance of evidence that plaintiff was, on or about the 22nd day of May, 1892, a passenger on a train of cars operated by the Southern Pacific Company, over the Galveston, Harrisburg & San Antonio Railway, and that one William O'Rourke, with the consent of defendants, and acting under their permission and authority, came upon a sleeping car attached to said train, in which plaintiff then, with his wife, occupied a berth, and willfully and wantonly unbuttoned and pulled apart the curtains of the berth occupied by plaintiff and his wife, and wantonly, willfully, and unlawfully took hold of plaintiff, shook and awakened him, and unlawfully

demanded of plaintiff the payment of fifty cents for bridge fare over the Pecos River, and threatened to eject plaintiff from said train if he failed to pay said fare, and that plaintiff was induced to pay said fifty cents to O'Rourke under fear of being ejected from said train, and if the conductor in charge of said train knew that such unlawful demand of O'Rourke (if it was unlawful) would be made on plaintiff, and that he, O'Rourke, would eject plaintiff from said train if he failed to pay said sum of money, and so knowing that such unlawful demand would be made, refused, on account of *instructions received by him* (if such instructions were received from the defendant railway companies, or either of them), to protect plaintiff from said unlawful demand, violence, and threat of said O'Rourke (if such unlawful demand was made), you will find for the plaintiff such damages as will reasonably compensate him for such injury, if any, sustained by him from said alleged unlawful act of said O'Rourke.' "

The main ground of objection to this charge is, that it should not have been left to the jury to determine whether the acts of O'Rourke, the bridge conductor, in taking hold of plaintiff and awakening him and demanding payment of the bridge fare, and threatening to eject plaintiff from the train if he failed to pay the fare, were unlawful.

We think the charge would have been improper, as contended, but for certain testimony in the record, which clearly shows the exaction of the bridge fare of fifty cents to have been unlawful.

We can not understand the transfer from the Galveston, Harrisburg & San Antonio Railway Company to the Pacific Improvement Company as purporting to do other than to convey its right of way over the space covered by the bridge.

There is evidence to show that the bridge was not built by the Galveston, Harrisburg & San Antonio Railway Company, but by the Pacific Improvement Company. Why then the conveyance from the former of the space the breadth of the company's right of way, and presumably the length of the bridge? The conclusion is inevitable, that this conveyance was a part of an arrangement of the Galveston, Harrisburg & San Antonio Railway Company for the use of the bridge, and its object must have been to vest in the improvement company the control and ownership of that much of defendant's right of way as was taken up by the bridge, in order, ostensibly at least, to separate the property of the one from that of the other.

Whether this object was real or apparent only is immaterial. The question arises, whether or not a railway corporation can by itself or through another make or authorize such use to be made of its right of way as would enable it to collect from the travelling public a greater rate of fare than is permitted by law.

It appears from the evidence that the bridge was something over a mile in length, and that fifty cents was in excess of what the law of

the State permits to be charged per mile for travelling over this distance on railways.

It is stated by Mr. Morawetz, that "any transaction which would disable a corporation from performing its duties to the State is against public policy and void. Hence a railroad can not make a valid sale or lease of any portion of its road, or of any property necessary to the operation of its road, without the consent of the Legislature." Mora. on Corp., sec 490.

The principle is stated in Thomas v. Railway, 101 United States, 71: "Where a corporation like a railroad company has granted to it a franchise intended in large measure to be exercised for the public good, the due performance of these functions being the consideration of the public grant, any contract which undertakes without the consent of the State to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the State, and is void as against public policy." See also Railway v. Morris, 67 Texas, 699.

We do not doubt the power of the defendant, the Galveston, Harrisburg & San Antonio Railway Company, to make any contract with another person or corporation to secure the erection of a necessary bridge over any stream over which its franchise extends, provided it does not by such contract deprive itself of the use of its right of way as its business contemplates, and provided it does not disable itself from complying with its obligations to the State.

It is obvious that if it were in the power of the railway corporation to make this disposition of its right of way at one place on its line, there is no reason why it could not do so at other places; and at every stream or other place upon its line it would be possible, in making an improvement that facilitated its operation, to evade the duty of carrying passengers at the rate required by statute.

We are of opinion that it was not in the power of the defendant, the Galveston, Harrisburg & San Antonio Railway Company, by itself or through another, to make or authorize to be made upon its right of way an improvement, and thereby create the right to demand more than the lawful rate per mile for travel over it. On this view of the case it must be held, that the passengers on defendant's line had the right to be carried over the bridge at the statutory rate, and the exaction of fifty cents therefor was unlawful.

The evidence clearly shows that the defendant, the Southern Pacific Company (which was then operating this line of railway), by express instructions to its servants, facilitated and permitted the exaction of this toll from its passengers, and we therefore see no reason why defendants would not be liable to plaintiff for damages, if any, sustained by him, even on the assumption that the bridge collector was the employe of another company. The law will regard the defendant as en-

titled to the free use of its right of way, and any arrangement which tends to limit this use will be disregarded.

The charge submitted to the jury whether or not the acts complained of were unlawfully done, can not, under these circumstances, be held to affect the judgment.

It is contended by appellant that plaintiff's ticket did not entitle him to be carried over the Pecos bridge on account of the words "Not good over Pecos bridge" being written thereon. There does not appear to have been any deception or mistake in selling plaintiff the ticket with these words upon it, and we think he was bound by it. The ticket was a 1000-mile ticket sold to him for $25, a reduced rate, and we are unable to see why it was not a proper subject of contract as to what portion of the road should or should not be good.

We do not think this would necessarily preclude plaintiff from recovering in this case. True, plaintiff did not offer to pay to go over the bridge at the rate of three cents a mile. It was the defendant's duty, however, to demand the proper fare (Hutchinson on Carriers, section 591a); but it is evident that if tendered it would not have been accepted. The demand was that he pay fifty cents or leave the train, and plaintiff was compelled to pay it by threats of ejection. The exaction of excessive fare is ground for damages.

It follows from what has already been said that there was no error in refusing to give the special charge asked by appellant, by which the jury would have been directed that the ticket he held did not entitle plaintiff to ride over the bridge, and if they found from the evidence that the damages to the plaintiff were caused by the acts of the bridge conductor in attempting to collect fare from the plaintiff for crossing the bridge, the verdict should be for defendants.

Also, from what has been said, it follows that it would have been misleading and erroneous for the court to have given the charge asked instructing the jury that the legal effect of the deeds read in evidence and the charter of the Pecos Bridge Company was to vest the title to the Pecos bridge in the Pecos Bridge Company.

The third assignment of error is as follows: "The court erred in directing the jury on the subject of damages as follows: 'You will find for the plaintiff such damages as will reasonably compensate him for such injuries, if any, sustained by him from said alleged unlawful acts of the said O'Rourke.' 1. In this, that said charge assumes that all the acts of the said O'Rourke were unlawful, and withdraws from the jury the finding of the issues of fact involved therein. 2. Said charge does not lay down as a matter of law the measure of damages, but leaves the same to the discretion of the jury. 3. And the court erred in refusing the special charge of defendants, intended to correct the misdirection of the court, which said charge is as follows: 'If the jury believe from the evidence that the plaintiff was informed before

night by the conductor of the train that his ticket did not entitle him to free transportation over the Pecos bridge, and that he would receive the same and pay it over to the bridge conductor, and he would not be disturbed by the conductor of the Pecos Bridge Company when the train reached the bridge in the night; and that if you believe from the evidence that if the same had been paid he would not have been disturbed, and if you further believe from the evidence that when the bridge conductor demanded the bridge fare the said plaintiff refused to pay the same for the purpose of enhancing the damages, then you are instructed that the aggravated damages caused by the intentional acts of plaintiff will not be allowed him in assessing the damages, if you should find for plaintiff under the charge of the court.' "

The charge was correct. The question is discussed in an opinion of this court in Railway v. Worthy, on rehearing, this day delivered. In view of what we have already mentioned, the court could properly assume that the exaction of the bridge fare was unlawful. But the court in this charge, considered with other charges, did not assume it. It is proper for the court to give the jury a rule for awarding damages, and the charge asked by appellants on this subject, if correct, should have been given. We think it embodied a correct proposition of law, and one applicable to the evidence. From the testimony it was possible for the jury to have inferred that plaintiff, knowing that his ticket did not entitle him to cross the bridge, and that this bridge fare would be exacted of him before crossing, and being able to comply with the demand, that he refused and delayed paying it in order to bring about acts which would enhance his damages. If this was his purpose, he should not have been allowed to thus increase his damages. On the other hand, the jury may have found from the evidence that plaintiff refused and delayed paying this fare in the belief that by his so doing the attempt to exact it would be abandoned, and that his purpose was not to enlarge a contemplated claim for damages. If plaintiff's purpose in the course he pursued was to bring about these circumstances in order to add to his damages, they should not have been allowed to have that effect. It has been so held in many cases, and the rule commends itself to our approval. The rule has been applied principally as affecting such elements of damage as mental pain, anxiety, and humiliation suffered by the passenger, and these the jury in this case were authorized by the court to consider in estimating exemplary damages. We see no reason why the rule is not applicable as well to personal inconvenience and discomfort sustained by the passenger for the purpose and under the circumstances stated. The charge asked was a proper one as affecting the measure and amount of damages, and appellant was entitled to have it given. Hutch. on Carr., sec. 809d; Pullman Car Co. v. McDonald, 21 S. W. Rep., 945; Railway v. Trimble, 15 S. W. Rep., 899; Railway v. Cole, 29 Ohio St., 126.

The remaining assignments of error are directed to the amount of the damages found by the jury. As we shall reverse the judgment, we may properly abstain from passing on these assignments.

Nor is it necessary to pass upon a question made by appellant touching the sixth and seventh assignments of error, as to our power by virtue of these assignments to reverse the judgment on account of the amount of the damages found.

The judgment will be reversed, and the cause remanded.

*Reversed and remanded.*

Delivered May 30, 1894.

NEILL, Associate Justice, not sitting.