No. 2203.

## The Gulf, Colorado & Santa Fe Railway Company *v.* Morris & Crawford.

1. CORPORATION.—A corporation organized for public purposes can not, except with the consent of the political authority which created it, render itself incapable of performing its corporate duties to the public, whether this be attempted by contract of lease, sale, or otherwise. Any such contract, made without legislative sanction, is void.

2. RAILWAY COMPANIES.—Under the statute authorizing a railway company to borrow money to construct, complete, improve or operate its road, and to give mortgages therefor, a purchaser may acquire title to the road by sale made under a power conferred in such a mortgage, or title may be acquired by purchase under judicial sale to pay such indebtedness. After such a sale the corporate existence continues, and the purchaser becomes in effect a stock holder of the corporation.

3. SAME.—A railway company chartered under general laws can not purchase the railway of another company; it results that, since the power to make such a purchase could not exist under an original charter of incorporation, it could not be obtained through an amended charter, in the absence of legislative permission.

4. SAME.—Though the statute requires articles of incorporation to be passed on by the attorney general before they can be filed with the secretary of state, and the incorporation completed, yet that officer can not judicially determine either the purposes for which a company may be incorporated or what powers it may acquire by the act of incorporation; the law, to be construed by the judicial department, must determine both.

5. CORPORATE POWER.—The rule that a corporation has only power to do such acts as its charter, considered in relation to the general law, authorizes it to do, applies to every class of corporations.

6. RAILWAY COMPANY.—The Gulf, Colorado & Santa Fe Railway Company obtained an amended charter, under general law, which provided, among other things, that it might purchase the Central & Montgomery Railroad, and own, operate and equip the same. Certain stock holders of the Gulf, Colorado & Santa Fe Railway Company purchased all the bonds and stocks of the Central & Montgomery Railroad Company, and, after destroying the bonds, attempted to sell the latter road to the Gulf, Colorado & Santa Fe Railway Company. Possession of the road bed, etc., was taken under the attempted sale, and the road operated and controlled as part of the Gulf, Colorado & Santa Fe Railway Company. *Held:*

   (1) That no title to the road passed by the purchase.

   (2) The Central & Montgomery Railroad Company continued as an existing corporation, and those holding its stock might complete a reorganization.

(3) The Central & Montgomery Railroad Company and its property was liable for any debts incurred in its management, without regard to whose management it was subjected to.

7. JUDGMENT—EXECUTION.—The issuance of an execution first to a county other than that in which judgment is rendered is an irregularity of which no one, not having an interest in the property levied upon, can complain.

APPEAL from Montgomery.  Tried below before the Hon. James Masterson.

The opinion states the case.  There was a motion for rehearing filed, and an answer thereto.  The motion was predicated to a degree on the statement that the decision was on a point not discussed by counsel, and upon which they desired to be heard. Following the custom usually observed by the Reporter, when no opinion is delivered on rehearing, the authorities embraced in the motion are not reported.

*Ballinger, Mott & Terry,* for appellant:  On their proposition that the court erred in its conclusions of fact that there had been no dissolution of the Central & Montgomery Railroad Company by the sale of its stock and bonds, they cited Revised Statutes, Articles 4124, 4131 and 4249.

On their proposition that the stockholders of a corporation are the equitable owners of the corporate property, although the legal title may be in the corporation, they cited Taylor on Stockholders, sections 50, 51; Morawetz on Corporations, sections 232, 240; Seamen v. Insurance Company, 18 Federal Reports, 250; Robinson v. Smith, 24 American Decisions, 216; Black v. Canal Company, 5 American Corporation Cases, 548.

On their proposition that the ownership of all the stock of a corporation carries with it the equitable title and ownership of all the corporate property, and that the court erred in not holding that Sealy became the owner of the corporate property of the Central & Montgomery Railroad Company when he became the owner of all its stock, and in not holding that the Gulf, Colorado & Santa Fe Railway Company acquired title by its purchase from him, they cited McBee v. Johnson, 45 Texas, 634; Hill v. Moore, 62 Texas, 612; Gainer v. Cotton, 49 Texas, 101; Satterwhite v. Rosser, 61 Texas, 166.

On their proposition that the court erred in its conclusion of of law that Sealy, having bought the entire stock and outstand-

ing bonded indebtedness of the Central & Montgomery Railroad Company, could not convey the corporate property of the same, and that the Gulf, Colorado & Santa Fe Railway Company did not purchase and become entitled to the same by virtue of Sealy's written proposition and acceptance, although the purchase money was paid, they cited McBee v. Johnson, 45 Texas, 634; Gainer v. Cotton, 49 Texas, 101; Gray v. Steamship Company, 7 Federal Reporter, 273; same case, 5 Supreme Court Reporter, 1166.

On their proposition that the sole and expressed object of the purchase of the stock and bonds by Sealy, being to enable the Gulf, Colorado & Santa Fe to acquire the road and equipments in accordance with its charter, and Sealy, having neither attempted nor intended to organize a new company under the charter of the Central & Montgomery, and, as sole stockholder, having disposed of its entire corporate property, the existence of the corporation thereby ceased and determined, they cited 1 Rorer on Railroads, 91; Thompson on Stockholders, section 310; Mumma v. Potomac Company, 8 Peters, 284; Briggs v. Penniman, 18 American Decisions, 454; State v. Bank, 41 American Decisions, 109, 119; Slee v. Bloom, 10 American Decisions, 277.

On their proposition that the Gulf, Colorado & Santa Fe Railway Company was a purchaser in good faith for valuable consideration from the sole stockholder, and took the property free of debt, they cited Garner v. Cotton, 49 Texas, 101; Hill v. Moore, 62 Texas, 612; 1 Rorer, 91; Morawetz on Corporations, 664; Thompson on Stockholders, section 3 ; Mumma v. Potomac Company, 8 Peters, 282; Powell v. Missouri Railway Company, 42 Missouri, 63, 67; Insurance Company v. Bank, 5 American Corporation Cases, 219, 220; Curran v. Arkansas, 15 Howard, 307; Hightower v. Thornton, 8 Georgia, 503; Briggs v. Penniman, 18 American Decisions, 454.

On their proposition that the amended charter of the Gulf, Colorado & Santa Fe Railway Company gave it the right to purchase the Central & Montgomery Railroad, and to own, operate, equip and maintain the same as part of its line; this right to purchase carried with it Sealy's right to sell; he was the only party in interest, and the only party from whom the purchase could be made, they cited 1 Rorer, 91; Powell v. Missouri Railway Company, 42 Missouri, 67; Gray v. Steamship Company, 7 Federal Reporter, 273.

*Hutcheson & Carrington* and *J. E. & W. P. McComb,* for appellees, on their proposition that the acquisition by one individual of the entire stock of a railroad does not dissolve it, they cited Morawetz on Corporations, section 634, at the end; Russell v. McLellan, 14 Pickering, 63, 69, 70; Angell & Ames on Corporations, section 771.

On their proposition that the acquisition by George Sealy of the entire stock of the Central & Montgomery Railroad Company, bought from its stockholders, and of the entire bonds bought from the bondholders, did not invest him with the title of the property of the company so as to enable him to convey to any one that corporate property as against the creditors of that company, among whom were Morris & Crawford, they cited Butten v. Hoffman, Central Law Journal, December 12, 1884, page 474; Wilde v. Jenkins, 4 Paige, 488.

On their proposition that the property of a corporation belongs to the corporation exclusively, and not to its members individually or collectively; the abstract entity is the owner and the only woner of the property; the claims of stockholders thereto is subordinate to the claims of creditors; no disposition of its property or dissolution of its existence can be effected by its stockholders so as to deny the creditor a right to sue it or to reach its assets without the creditor's consent to the novation, they cited Green's Brice's Ultra Vires, 133, note, 139, note, 525, 527; Boone on Corporations, section 41; Morawetz on Corporations, sections 563, 564, 566, 571; Angell & Ames on Corporations, section 779.

On their proposition that there was no charter power in the Central & Montgomery Railroad Company to merge into the Gulf, Colorado & Santa Fe Railway Company; there was no charter power in the Gulf, Colorado & Santa Fe Railway Company to buy it or otherwise own it, and the effort to acquire it was in contravention of the public policy of this State, enacted into law, that competing lines should not consolidate or merge into each other, they cited New Orleans & Jackson Railroad Company v. Harris, 27 Mississippi, 517; 1 Redfield on Railways, 557, 559; Green's Brice's Ultra Vires, 392–395, notes; Shortz v. Unangst, 3 Watts & Sargeant, 45.

On their proposition that a sole owner of stock can not in his individual name sell the property or bind the company, they cited Stokes v. New Jersey Passenger Company, Central Law Journal, February 6, 1885, page 110; Tippetts v. Walker, 4 Mas-

sachusetts, 598; Tileston v. Newell, 13 Massachusetts, 407; Mora-wetz on Corporations, 381; 1 Wood on Railroads, 7, 165, 167.

STAYTON, ASSOCIATE JUSTICE. On April 14, 1882, the charter of the appellant was amended under the general law, and in that it was provided, in addition to powers otherwise given, that it should have power "also to construct, own, operate, equip and maintain a branch of said railway, to be called the eastern branch thereof, commencing at a point on its main line in Burleson county, about two miles north of the Yegua, thence easterly through the counties of Burleson, Brazos, Grimes and Montgomery, to a point on the International & Great Northern Railroad, within three miles of the Lemuel Smith one thousand two hundred and eighty acre survey in Montgomery county, with the right to purchase the Central & Montgomery Railroad, and to own, operate, equip and maintain the same under this charter as a part of said eastern branch."

The Central & Montgomery Railroad Company then owned and was operating a railroad from the town of Montgomery, in Montgomery county, to Navasota, in Grimes county; about twenty-eight miles in length, and running near to and nearly parallel with the proposed eastern extension of the appellant's road, and making connection with the Houston & Texas Central Railway at Navasota.

A number of the stockholders of the Gulf, Colorado & Santa Fe Railroad, through one of their number and in his name, purchased all the stock and outstanding bonds of the Central & Montgomery Railroad, and destroyed the latter, intending to sell that road to the appellant. These stockholders, however, never bought the Central & Montgomery road, except as they may have acquired an interest in that road by the purchase of the shares of stock and bonds it had issued.

The matter thus standing, the stockholder in whose name all of the purchased stock stood, for the benefit of himself and those interested with him, made to the executive committee of the appellant the following proposition.

"GALVESTON, TEXAS, JUNE 12, 1882.
"*H. Rosenberg, Esq., Chairman Executive Committee Gulf, Colorado & Santa Fe Railway Company:*
"DEAR SIR—On the fifteenth day of June, 1881, your board of directors authorized a subscription of fifteen hundred thousand

dollars in stock and three millions of bonds of your company at par for the purpose of the further extension of your road. The subscription was taken by the stockholders of record on the first day of June, 1881, thereby giving to them the right of all stock and bonds to be issued by your company until said subscription is canceled. Ascertaining that your company had determined to extend a branch road into eastern Texas for the purpose of reaching the timber country, and believing it to be advisable to prevent the competition of a competing line of road already in existence by procuring the same, I was authorized by the subscribers to your stock and bonds to make the purchase of the Central & Montgomery road, extending from Navasota to Montgomery, a distance of about twenty-eight miles, and I now offer the same to your company, including all of its equipments, free from all debt, stock, bonds and otherwise, for the following consideration:

204 bonds of your company at par....................$204,000 00
With coupons attached to July 1...................... 7,140 00
Stock of your company............................... 238,500 00
And cash............................................ 29,455 22

In all.............................................$479,095 22

"Asking your immediate action upon this proposition, I remain, very truly, "GEO. SEALY,

*"For the subscribers to the* 1,500,000 *Stock,* 3,000,000 *Bonds."*

And on the same day the proposition was accepted in writing by H. Rosenberg, on behalf of the executive committee, as follows:

"In accordance with the resolution of the board of directors, May 8, 1882, directing me to purchase the Central & Montgomery road at a cost not exceeding twelve thousand dollars in bonds and eight thousand dollars in stock of this company, per mile, and this proposition being within that limit, we hereby accept the proposition of George Sealy, and recommend the board of directors to approve of our action.

"For the Executive Committee,
" H. ROSENBERG, Chairman."

This action was reported to the board of directors at a regular meeting held by them on the same day, and was approved and adopted by the board as its act, and all this was approved by the stockholders at a regular annual meeting held by them on October 3, 1882. The Gulf, Colorado & Santa Fe Railway Com-

pany took possession of the Central & Montgomery Railroad on June 15, 1882, and from that time continuously run, operated, repaired and maintained it, at its own expense, as a part of its line under its amended charter, and thereafter the Central & Montgomery Railroad Company ceased to exercise control over the road or to keep up its corporate organization, but its presideur made a report to the comptroller, as required by law, showing the condition of the company to the date last mentioned.

No further facts tending to show that the Gulf, Colorado & Santa Fe Railway Company acquired title to the Central & Montgomery Railroad are shown or claimed to have existed, except that the price named in the proposition to sell before mentioned was fully paid. Morris & Crawford subsequently obtained a judgment against the Central & Montgomery Railroad Company in the district court for Montgomery county, which was affirmed on writ of error at the present term. The cause of action on which the judgment was obtained accrued in part prior to June 12, 1882, and all grew out of the failure of the Central & Montgomery Railroad properly to transfer freight.

An execution, the first and only one, issued on the judgment in favor of Morris & Crawford on March 27, 1884, directed to the sheriff of Grimes county, which was levied on the road bed, iron track, ties, switches and right of way of the Central & Montgomery Railroad.

This action was brought by the Gulf, Colorado & Santa Fe Railway Company to enjoin the sale of the Central & Montgomery Railroad under the judgment, execution and levy in favor of Morris & Crawford. A writ of injunction was issued, but on final hearing it was dissolved, and a judgment, giving ten per cent damages for delay was rendered against the plaintiff company. The injunction was sought, and is now claimed, on the theory that the facts we have stated passed title, at least equitable, in the Central & Montgomery Railroad to the Gulf, Colorado & Santa Fe Railway Company, and that it thereby became not liable for sale for the debt due Morris & Crawford.

It is not claimed that the Gulf, Colorado & Santa Fe Railway Company purchased the stock of the Central & Montgomery Railroad, nor could it well be so insisted under the facts. It is denied that the transaction operated a consolidation of the two railroads, and that they thereby became one under the charter of the Gulf, Colorado & Santa Fe Railway Company. It is also denied that the one was in any way merged in the other, and

in all these propositions we concur with counsel for the appellant. It is claimed, however, that the Central & Montgomery Railroad corporation was dissolved by the facts stated, and that the property which it owned before dissolution became the property of the appellant company.

It is well settled that corporations organized for public purposes can not, by contract of sale, lease or otherwise, render themselves incapable of performing their duties to the public, or in any way absolve themselves from the obligation which forms the main consideration for giving them a corporate existence, unless this be done by consent of the State, given through the charter, or in some other manner. Hence, any contract through which such a corporation seeks to accomplish such a result is void, unless it has legislative sanction. (Thomas v. Railroad Company, 101 U. S., 71; Price on Railroads, 10; Taylor's Law of Private Corporations, 305, 131-2; Morawetz on Private Corporations, 490, 485.) Authorities bearing on the various phases of this question are cited in notes given by the elementary writers here mentioned.

The stockholders of a strictly private corporation, acting in the mode prescribed by law for the transaction of its business, may dispose of its assets and thereby become unable to carry on further the corporation business, for the public has no interest in the continuance of such a business.

Do the facts show that the Gulf, Colorado & Santa Fe Railway Company has become the owner of the property of the Central & Montgomery Railroad Company, which it may operate under the charter of the latter, and hold freed from the debts of that company?

The first question arising on this inquiry is: Had the Gulf, Colorado & Santa Fe Railway Company any power to buy the property of the Central & Montgomery Railroad Company? This will depend upon whether the charter of the former gave it power to buy, or the charter of the latter gave it power to sell to the former.

Both corporations were chartered under the general law regulating the incorporation of such companies, in so far as any question involved is concerned. Whatever powers that law authorizes to be conferred upon them, through their charters, they had, and they had no more and no less; this, of course, carrying such incidental powers, not enumerated, as were necessary to enable them to exercise properly the powers expressly

granted.   No part of the general law authorizes one railroad company to buy the railroad of another. nor does it authorize a railroad company to sell its road to another company or to any person.   The law authorizes railroad companies to borrow money to construct, complete, improve or operate their roads, and to give mortgages therefor.   (Revised Statutes, Article 4219.)

These mortgages may be foreclosed through the courts, or sales may be made under powers contained in such mortgages, and title to the property will pass.   They may become indebted, in the course of their business, and their property, including franchise, subjected to sale under judicial process to pay such indebtedness.   But in such cases the corporation continues, and the purchasers become in effect new stockholders, the corporation property so purchased, however, being relieved from liability for debts not creating a prior incumbrance on the property sold.   These are the means through which the laws of this State authorize the sales of railroads.

They do not contemplate that one railway company shall have the power voluntarily to buy from or sell to another.   The purpose for which the incorporation of railroad companies is permitted under the general incorporation act determines largely the powers they may exercise.   That Act provides that "any number of persons, not less than ten, being subscribers to the stock of any contemplated railway, may be formed into a corporation for *the purpose* of constructing, owning, maintaining and operating *such* railroad, by complying with the requirements of this chapter."   (Rev. Stat., Article 4099.)

They are authorized to incorporate *for one purpose;* to construct, to own, to maintain, and to operate *such railroad—i. e.,* to own, maintain and operate the road the company may construct under its charter.   Incorportion is not authorized for several and distinct purposes; as to construct a road for some other corporation; to maintain a railroad owned by some other corporation; to operate a railroad owned by some other corporation; nor to become the owner by purchase of a railroad constructed and owned by some other corporation.   This is the only legitimate construction that can be placed upon the language used in the statute.

If, however, there could be doubt as to this, the matter is made too clear by subsequent provisions of the law.   The law requires articles of incorporation to be adopted, signed and filed in the office of the Secretary of State, and these are re-

quired to give information on specified subjects, and among others to state the identical thing the contemplated corporation proposes to do.    They must state "the places from and to which it is intended *to construct the proposed railroad,* and the intermediate counties through which it is proposed to construct the same." (Rev. Stat., art. 4101.)  "When the articles of incorporation have been filed and recorded as herein provided, the persons named as corporators therein shall thereupon become and be deemed a body corporate, and *be authorized to proceed to carry into effect the objects set forth in such articles* in accordance with the provisions of this title." (Rev. Stat., art. 4105.)

Thus is the power which such corporations may have when incorporated under the general law, declared.

It may be urged, however, that if the power of the one corporation to buy the road of the other was not given under the original charters of either corporation, yet that such a power was acquired through the amendment to the charter of the Gulf, Colorado & Santa Fe Railway Company, which provided, in effect, that it should have the "right to purchase the Central & Montgomery Railroad and to own, operate, equip and maintain the same under this charter as a part of said eastern branch." The law providing for the amendment of railroad charters nowhere intimates that such a corporation may acquire rights or powers through an amendment which it could not have acquired under its original incorporation.

One of the leading purposes intended to be subserved through an amendment to a railroad charter under the general law, was to enable them to change or extend the line of road to be constructed, and not to enable them to acquire powers of a character different to those they might acquire through the original Act of incorporation.    This is illustrated by Article 4113, Revised Statutes, which is the only part of the law regulating amendments, other than such as put restrictions on the right to amend, that indicates the character of amendments that may be made.    It provides that "any railroad corporation may, by amendment to its charter *project and provide for the locating, constructing, owning, maintaining and operating a branch line* to its original or trunk line of railroad, from any point on the said original main or trunk line to any other point in this State, by a branch line to the main line, making an angle with said main line of at least twenty-five degrees in the general course of said

branch line, and also so projected that said branch line shall in no case be so located as to be or become such a line of railroad as that, if the same were owned by another corporation, the corporation owning the main line or any one of the other branches thereof would be forbidden by the Constitution and laws from consoldidating therewith on account of the lines being parallel or competing lines."

The succeeding Article provides how much of a line, authorized to be built by an amendment, shall be completed and put in running order within given periods. No one can acquire a power or right under a law which the law itself does not provide he may have, by a compliance with it. The articles for incorporation under the general law are required to be passed upon by the attorney general before they can be filed and incorporation be accomplished; but the law does not confide to the attorney general nor to the incorporators the power to determine for what purpose incorporation may be had, or what powers the corporation may acquire by the Act of incorporation. That is determined by the law which permits the incorporation.

The rule that a corporation has power to do only such acts as its charter, considered in relation to the general law, authorizes it to do, applies to every class of corporations. The powers need not all be express, for such will be implied as are necessary to enable the corporation to carry out the powers expressed or necessary to accomplish the general purposes for which the corporation is created. Power to buy a railroad can not be implied from an express grant of power to construct, own, maintain and operate a railroad, to be constructed by the corporation to which those express powers are given, for the existence of such a power is not necessary to accomplish the object specified.

The one corporation having no power to purchase the railroad of the other, it must be held that the appellant company acquired no title to the property levied on; and it therefore becomes unnecessary to consider any equities that may grow out of the transaction between the parties to it. The Central & Montgomery Railroad Company is an existing corporation, so far as appears from the record before us, and such person or persons as may hold its stock have it within their power to complete a reorganization. As held at the present term in the case of the Central & Montgomery Railroad Company v. Morris & Crawford, that company and its property are liable for any matter of

indebtedness incurred, in the management of whomsoever the railroad may have been.

The issuance of an execution first to a county other than that in which the judgment was rendered was an irregularity; but of this no one not having an interest in the property levied upon can take advantage.

The injunction was, therefore, properly dissolved.

The statute permits the assessment of ten per cent damages on the dissolution of an injunction when it appears that the injunction was obtained for *delay only.* We are of the opinion that the facts of this case, considering the nature of the questions involved, do not show that such was the purpose for which the injunction was obtained.

The judgment will therefore be reversed, and so reformed as to dissolve the injunction without giving damages. It is so ordered.

*Reversed and reformed.*

Opinion delivered March 25, 1887.

[NOTE.—This case was not accessible when it should have been reported among the opinions of the Galveston term.—REPORTER.]