## H. B. SANBORN V. WILLIAM H. BUSH ET AL.

### Decided November 25, 1905.

**1.—Interrogatories Taken as Confessed, When.**

In the absence of evidence showing that the refusal of a witness to appear before an officer and answer ex parte interrogatories propounded to him was contumacious or deliberate, the interrogatories should not be taken as confessed.

**2.—Trespass to Try Title—Pleading—Affirmative Relief.**

It seems that in trespass to try title, where the pleadings are only those usual in such case and neither party pleads facts showing a right to affirmative, equitable relief, the holder of the legal title is entitled to recover, and his title can not be avoided for duress.

**3.—Duress of Property.**

The fact that plaintiff felt constrained, considering the wealth of the defendant and his own comparative financial weakness, to accept the terms proposed by the latter as the best that could be done under the circumstances, does not constitute duress of property. Facts considered, and held not to show duress of property.

Appeal from the District Court of Potter County. Tried below before Hon. Ira Webster.

*Reeder & Cooper,* for appellant.

*Cratty Bros., Jarvis & Latimer* and *Veale, Crudgington & Bailey,* for appellees.

SPEER, ASSOCIATE JUSTICE.—This suit was instituted by appellant against appellees William H. Bush, Francis T. Simmons and Mrs. Harriet B. Simmons, wife of said Francis T., as an ordinary action of trespass to try title to recover block number 60 in the Glidden and Sanborn addition to the town of Amarillo. The Simmonses answered by a general demurrer, general denial and plea of not guilty. William H. Bush disclaimed, and asked to be dismissed with his costs. Potter County intervened in the suit, and pleaded that plaintiff Sanborn had dedicated the property in question to the county for courthouse purposes, and further claimed under a conveyance as against the Simmonses. The county also pleaded a ratification by plaintiff of a deed of conveyance made by defendant Bush to defendant Harriet B. Simmons, the effect of which deed appellant seeks to overcome in his suit, to which plea appellant replied that the said ratification was the result of duress of property upon the part of said William H. Bush. There were also a large number of exceptions to the plea of intervention of the county, which we deem it unnecessary to recite.

Upon the trial of the case the district judge instructed the jury to return the following verdict, which was done: "We, the jury, find for the defendants as against the plaintiff, and we further find for the intervener, Potter County, as against both plaintiff and defendants, for the premises in controversy, and that the intervener holds the same by purchase from the defendants Simmons and wife under their transfer, to

wit, as alleged in its petition of intervention in this cause." From the judgment based upon this verdict this appeal has been perfected.

The ruling of the court upon appellant's motion to change the venue of the case ceases to be an issue in view of the summary instruction to find for the defendants. Appellant could not be prejudiced by such ruling if the instruction can be justified in the facts.

There was no error in overruling appellant's motion to take as confessed the ex parte interrogatories propounded to appellee, Mrs. Simmons. The certificate of the notary public, in the absence of any explanation upon the part of the witness, might require that the interrogatories be taken as confessed because of her refusal to appear before such officer and answer, but her testimony, subsequently taken, as well as that of other witnesses, including her attorney, who advised her in the premises, indicates clearly that her refusal was not contumacious or deliberate. Mr. Cratty, her attorney, who resided in Chicago, where Mrs. Simmons also resided, testified to the effect that, upon learning that the parties had been subpoenaed to appear before an officer to answer interrogatories in the suit, he began an investigation to ascertain the character of depositions sought, and the authority of the officer to take them, and to this end sought out the notary who had in charge the interrogatories, but that such notary refused to allow him to see the interrogatories, and, not having had notice from his associate attorneys in Texas, who had the management of the case, he advised the witnesses not to appear before the notary. Upon receiving advice from the Texas attorneys to that effect, he immediately made every effort to have the witness appear before the notary and answer the interrogatories. From this we think it clear that the ruling of the court was proper. (Bounds v. Little, 75 Texas, 316; Robertson v. Melasky, 84 Texas, 559; Baldwin v. Richardson, 13 Texas Ct. Rep., 189.)

We next consider the question of the court's instructing a verdict against appellant, because, if this ruling be sustained, all other complaints of appellant are unimportant, and cease to be issues in the case. In this connection it will be necessary to make at least a brief statement of the issues upon which appellant contends he was entitled to go to the jury. On February 5, 1898, appellant executed and delivered to William H. Bush his warranty deed conveying to said Bush all lots and blocks of land owned by him in the town of Amarillo, and eighteen sections of land in Potter and Randall Counties, in settlement of $41,-416.91, which he owed Bush on two promissory notes secured by mortgage on the same and other property. William H. Bush conveyed block 60, the land in controversy, and four lots in block 53, to appellee Mrs. Simmons by warranty deed, prior to October 17, 1902, for a recited consideration of $2,500. It is contended by appellant that his deed of February 5, 1898, to William H. Bush, was intended to be, and was, a mortgage to secure the indebtedness due to Bush, and upon this issue the evidence was conflicting, and the issue should, if it stood alone, have been submitted to the jury. It is also contended that Mrs. Simmons purchased with notice that such instrument was a mortgage, and that she paid no part of the purchase price, and therefore could not claim to be an innocent purchaser for value; upon this issue the evidence is possibly conflicting. A controversy having arisen between appellant

and William H. Bush, with reference to the character of the instrument of February 5, 1898, they entered into a written contract of date October 17, 1902, by the terms of which it was agreed that Bush should reconvey to appellant that portion of the property conveyed in said deed which had not been previously sold by Bush. The terms of this agreement contemplated a complete accounting between the parties and a repayment by appellant to Bush of the original indebtedness, with interest, and other items of cost and expense incident to the management of the property. On November 1, 1902, another written agreement to the same effect, but somewhat enlarged in that it contained an itemized statement of debits and credits, was entered into. On January 3, 1903, they had a final settlement of their differences evidenced by a written agreement, in which appellant approved all sales of said property made by Bush, and received Bush's deed of conveyance of the unsold part of said property, at the same time paying in full the original indebtedness to Bush, and, as appellant contends, the sum of $2,500 besides. Appellant insists that he is not precluded from a recovery on account of this ratification, because the same was obtained by Bush under such circumstances as to amount to duress of property.

We are inclined to hold that where, as here, the pleadings are those of a formal, statutory action of trespass to try title, in which neither the plaintiff nor the defendant has pleaded facts showing a right to affirmative, equitable relief, the effect of an instrument affecting the property can not be avoided for duress. In such a case the holder of the legal title is entitled to recover. Groesbeck v. Crow, 85 Texas, 200; Matthews v. Moses, 21 Texas Civ. App., 496, 52 S. W. Rep., 113, and authorities there cited.) But without deciding this question (in view of the uncertainty of the application of the rule because of appellant's replication of duress to intervener's plea of ratification), we hold that the ruling of the court in giving the summary instruction to find against appellant was justified, because his own evidence fails completely to make a case of duress, and, such being true, the deed from Bush to Mrs. Simmons, whether she be an innocent purchaser or not, having been expressly ratified by appellant, is binding upon him, and entitles her to the judgment entered in her favor. Appellant testified as follows: "We had a very heated discussion, and in course of that conversation talked of settling our differences in the United States Court, and I thought at one time that would be the only recourse on account of the way he was refusing to deed the property back to me. But finally he asked me what I would take for my interest in the property, and I told him I would not sell at any price. I argued the case as best I could, and tried to get him to deed the property back to me. Finally he said that for $10,000 over and above the principal and interest of the indebtedness he would deed the property back to me. I refused to pay this. Then he came down to $5,000, and then I think he came down to $3,000. Then he made me a proposition to take $2,500, in addition to full payment of principal and interest, and that he would execute the deeds, but I refused to accept that proposition. But about that time Mr. Carnes told me that he thought it would be better to accept this proposition. Mr. Carnes was Mr. Bush's lawyer, and Mr. Bush got Mr. Carnes to come up there to Chicago from Sycamore, Illinois, to attend that conference.

Mr. Carnes said to me that he thought it would be better not to let the matter go to court, as it would cost a good deal of money and a good deal of delay, and he advised me to accept this proposition, and they kept insisting on $2,500 in addition to the principal and interest of the indebtedness, and I just felt I would rather be robbed out of that much than to have any more trouble, and I was obliged to be robbed of that much under the circumstances, so finally I accepted it in a way. After I agreed to this proposition that agreement was reduced to writing, in accordance with the verbal agreement, but I entered into it under absolute protest of the very strongest character. The reason that I was obliged to accept this proposition was because Mr. Bush would not deed the property to me unless I would do so. I made up my mind that that was as far as I could go, and the best I could do under the circumstances, and so I entered into that agreement in that way. I would say that the property Mr. Bush held that belonged to me, and that he deeded back to me on January 3, 1903, was worth about $140,000 or $150,000. It was practically everything that I had in the world. I know of my own knowledge, and from the property he owned, that he is a wealthy man, and was on the date referred to—October 17, 1902. When that item of $1,000 commission to Mr. Simmons, for the sale of the Amarillo Hotel property, came to my notice, I objected to it, and Mr. Bush repeated positively that Mr. Simmons, and even Mrs. Simmons, had been largely instrumental in closing up that deal. He said that they had entertained the Canodes in their home, and had used their influence in such a way that the Canodes were induced to purchase the hotel, and he said that their influence and help was worth that much, and he charged that amount to me as a commission for making the sale of the hotel property. It is a fact that, in performance of the agreement made October 17, 1902, Mr. Bush rendered me a statement of accounts, in which he charged up, as an item in said account, the commission of $1,000 for the sale of the Amarillo Hotel property before the signing of the contract of November 1, 1902. It is not a fact that we had all of our discussions and settled all of our differences and agreed on a settlement some time before the signing of the contract of November 1, 1902. But we had discussed it to some extent at the time the statement was made and presented to me, and that was prior to November 1, 1902. The item of $1,000 commission to the Simmonses was discussed prior to the contract of 1903. Prior to the time I signed this agreement of January 3, 1903, Mr. Bush and myself had fully gone over and discussed the matters of the sale of block 60 and four lots in block 53 by Mr. Bush to Mrs. Harriet B. Simmons, and as well, also, the item of $1,000 as commission to Mr. and Mrs. Simmons on account of the sale of the Amarillo Hotel property to the Canodes, but at the time we discussed this, and went into the matter, that item of $1,000 as commission was objected to by me, but I finally signed the agreement, but under particular protest. I did not say that I signed this agreement of January 3, 1903, under the advice of Mr. Carnes, but I did say that we agreed on that matter of $2,500 to Mr. Bush under his advice. It is true that my talk with Mr. Carnes, whom I considered a friend, had something to do with my signing the contract of January 3, 1903. . . . When we were discussing the item of $1,000 commission to the Simmonses for

the sale of the Amarillo Hotel property to the Canodes, I objected to it, as I thought the amount was too high. I don't know that I stated that I thought $500 would be enough, and that we afterwards agreed to split the difference, and Mr. Bush pay $250 of that commission out of his pocket, but I believe that may have been the way we arrived at the amount of $750 that was finally allowed in our settlement. The item of commission was in the statement of October, and I agreed on that amount before signing the contract of January 3, 1903. . . Yes, sir, at that time the question of the allowance of the $1,000 commission to Mr. Simmons came up. I certainly did object to the sale of that property to Mr. and Mrs. Simmons, and I said to Mr. Bush that the price he was getting was inadequate. I think the fact that I thought he was not getting enough for the property was the principal objection I had to the sale. . . . I did not protest or object to the sale of block 60 and the four lots in block 53 to Mrs. Simmons only insofar as this matter of the price and the amount of the commission was concerned. . . . Yes, sir; during all that time I was protesting that I should get better than I was getting under the agreement, and Mr. Bush was protesting that he should get better than he was getting. Yes, sir; there was what you would call a mutual protest between us, and in the conflict of this mutual protest we arrived at this agreement that I have just testified about."

This, while not all of appellant's testimony along this line, fairly illustrates its tendency, and falls far short, we think, of showing such unlawful and wrongful detention of his property as would amount in law to duress. (French v. Shoemaker, 14 Wall., 314, 20 L. Ed., 852; Hackley v. Headley, Mich., 8 N. W. Rep., 511; Shelton v. Jackson, 20 Texas Civ. App., 444, 49 S. W. Rep., 415; Alexander v. Trufant Co., 34 S. W. Rep., 182.) The remarks of Justice Cooley in the case of Hackley v. Headley, supra, are peculiarly apt in the present case. He says: "In what did the alleged duress consist in the present case? Merely in this: That the debtors refused to pay on demand a debt already due, though the plaintiff was in great need of the money, and might be financially ruined in case he failed to obtain it. It is not pretended that Hackley and McGordon had done anything to bring Headley to the condition which made this money so important to him at this very time, or that they were in any manner responsible for his pecuniary embarrassment except as they failed to pay this demand. The duress, then, is to be found exclusively in their failure to meet promptly their pecuniary obligation." The duress claimed in that case consisted of taking advantage of the plaintiff's dire financial straits to coerce him into accepting a less sum in payment of a debt due him than was actually owing. So in this case, the most that can be said in favor of appellant's contention is that he felt constrained, under the circumstances, considering the wealth of his antagonist and his own financial weakness in comparison, to accept the former's proposition as the best to be done under the circumstances. In what does the duress consist? Clearly he does not show that his mind was so influenced as not to be free, and at most his objection was as to paying the $2,500 above his indebtedness to Bush and allowing a commission of $750 as a part of the consideration for the sale of the land in question to Mrs. Simmons. If, in any

event, he should be entitled to recover these items from Bush as having been paid under duress, clearly he should not be allowed to recover the land conveyed by Bush to Mrs. Simmons, to which conveyance he in no wise objected further than that the consideration was inadequate. We do not believe that the issue of duress was raised by his testimony, and the court, therefore, did not err in instructing the jury as he did.

Whether there was error or not in the form of the judgment authorizing the intervener to recover from the Simmonses, or, indeed, in permitting the intervention at all, is immaterial insofar as appellant is concerned, since in no event was he entitled to recover, and the irregularity, if any, in these respects, could at most amount only to a question of costs, as to which appellant has made no complaint.

The judgment of the District Court is in all things affirmed.

*Affirmed.*

Writ of error refused.