## TROTT v. FLATO et al. (No. 6787.)*

(Court of Civil Appeals of Texas. San Antonio. Oct. 11, 1922. Rehearing Denied Nov. 8, 1922.)

**1. Corporations ⊂⊃118—Option to purchase stock held forfeited when not exercised.**

Where plaintiff conveyed a cotton-ginning plant and property connected therewith to a trustee under an agreement that a corporation was to be formed, and the stock issued to his creditors, and that he should have the option of purchasing the stock by paying one-third of the amount on January 1, 1917, one-third on January 1, 1918, and one-third on January 1, 1919, he forfeited his right to take advantage of the option by failing to do so in 1917.

**2. Judgment ⊂⊃250—When plaintiff stands on strict legal right, court cannot go beyond case pleaded.**

Where plaintiff conveyed a cotton-ginning plant and other property to a trustee under an agreement that a corporation was to be formed and the stock issued to his creditors with the option to him to purchase the stock, and in a suit for conversion of the property, or its recovery, he stands strictly on the alleged legal right, and does not seek to set aside the contract, or the corporate charter, or offer to pay any of the indebtedness, the court cannot go beyond the case pleaded.

**3. Trover and conversion ⊂⊃16—Plaintiff conveying title held to have none which would support action.**

Where plaintiff conveyed a cotton-ginning plant and other property to a trustee under an agreement that a corporation should be formed and the stock issued to his creditors, with the option to him to purchase the stock, title passed by his legal conveyance, and he had no right or title authorizing him to recover the property or damages for its conversion.

**4. Corporations ⊂⊃182—Ownership of all stock does not pass either legal or equitable title to corporate property.**

The ownership of all the stock of a corporation does not pass either the legal or equitable title to the corporate property.

**5. Trover and conversion ⊂⊃34(2)—Plaintiff bound to prove his title as alleged.**

Plaintiff, suing to recover property, or damages for its conversion, is bound to prove title under the allegations made, as defendant is only called upon to look to the pleadings to see what he is required to meet.

**6. Pleading ⊂⊃48, 378—Plaintiff need only state cause of action and nature of case sufficiently on which he seeks recovery; general denial puts plaintiff on proof of every allegation necessary to suit.**

Since all fictitious forms of action and those required at common law have been abolished, the plaintiff is only required to state his cause of action and the nature of the case sufficiently upon which he seeks to recover, and a general denial puts him upon proof of every affirmative allegation necessary to maintain his suit.

**7. Evidence ⊂⊃397(1)—When written instruments vested title in certain persons, they could not be varied without proper pleading.**

Where plaintiff conveyed a cotton-ginning plant and other property to trustee under agreement that a corporation should be formed and stock issued to his creditors, the written instruments, which on their face vested title, could not be varied or contradicted by parol testimony to the contrary, in the absence of a proper pleading.

**8. Contracts ⊂⊃153—Legal and lawful effect given written instruments rather than unlawful.**

Where plaintiff conveyed cotton-ginning plant to trustee under agreement that corporation should be formed and stock issued to his creditors, with the option to him of purchasing the stock, the legal and lawful effect of the instruments as gathered from the whole thereof must be given them, rather than an illegal one.

**9. Chattel mortgages ⊂⊃5—Conveyance under agreement that corporation should be formed and stock issued to creditors not a mortgage.**

Where plaintiff conveyed cotton-ginning plant to trustee under agreement that corporation should be formed and stock issued to his creditors with the option to him of purchasing the stock by paying the creditors, the transaction did not constitute a mortgage; there being no element of defeasance and the debts being canceled and not continued.

**10. Mortgages ⊂⊃137—Legal title remains in mortgagor whether mortgage or deed of trust.**

The legal title remains in the mortgagor, whether it be a mortgage pure and simple or a deed of trust.

**11. Chattel mortgages ⊂⊃5—Conveyance not treated as mortgage when corporation formed on affidavit that capital stock paid by transfer of property.**

Where plaintiff conveyed property to trustee under agreement that corporation should be formed and stock issued to his creditors with the option to him of repurchasing the stock, and a corporate charter was obtained on affidavit, stating that the capital stock had been paid by transfer of the property to the corporation, the bill of sale cannot be construed as a mortgage, as this would show that the charter was obtained by fraud, and the transaction must be given that construction which upholds its legal effect.

**12. Equity ⊂⊃66—Plaintiff cannot have bill of sale construed as mortgage when he does not offer to do equity by discharging the indebtedness.**

Plaintiff, suing to recover property or damages for its conversion, cannot have his bill of sale thereof construed as a mortgage, when he does not recognize his indebtedness or offer to do equity, or indicate his willingness to discharge the indebtedness, as parties seeking equitable relief must do, or offer to do, equity.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction January 3, 1923.

Appeal from District Court, Nueces County; Wm. Masterson, Special Judge.

Action by C. H. Trott against R. G. Flato and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John C. Scott, of Corpus Christi, for appellant.

Kleberg, Slayton & North, of Corpus Christi, for appellees.

COBBS, J. This suit was filed in the district court of Nueces county by appellant to recover damages of appellees for the alleged conversion of a cotton ginning and packing or bailing plant, located in Corpus Christi, consisting of gin stands, cotton presses, with boilers, engine, and electric motor, all installed, also all equipments and other personal property, and all the buildings and improvements on the lots on which the plant was situated, and connected with and forming a part of the plant, and also a lease of the lots on which the same was located, which were alleged to be of the aggregate value of $35,000, which amount appellant seeks to recover as actual damages. He also seeks to recover the sum of $8,000 for the annual use as rental value, and seeks to recover the further sum of $6,000 as exemplary damages. In the alternative, for judgment for the restitution and possession of the property, together with the sum of $8,000, annual rental for the use and occupation of the premises, together with interest. Appellees filed responsive pleadings, and the case proceeded with a trial by a jury. At the conclusion of the evidence each defendant requested an instructed verdict, which was refused by the court. However, the court, upon its own initiative, gave a peremptory instruction for a verdict in favor of the appellees, in the following language:

"In this case the plaintiff, Trott, sued the defendants, Flato and others, for damages for an alleged conversion of certain gin property situated in Corpus Christi, Nueces county, Tex., and particularly described in plaintiff's petition herein.

"Now, you are instructed that the undisputed evidence herein (including the plaintiff's testimony) shows that the plaintiff, Trott, voluntarily conveyed the said gin property on January 4, 1916, to L. C. Wells. as trustee, for the use and benefit of the Trott Gin Company, in compliance with a written instrument, executed on said date by the said plaintiff, Trott, Robert E. Goree, and the Corpus Christi National Bank, the latter two being creditors of said Trott; that thereafter, to wit, on January 4, 1916, the evidence further shows the said Wells, as trustee, in compliance with said written instrument hereinabove referred to, conveyed to the Trott Gin Company the said gin property; and, there being no allegation or proof by plaintiff of any fraud, accident, or mistake in connection with the execution of said instrument, you are instructed that under such circumstances there was no conversion of said property by the defendants, or either of them, as alleged herein by the plaintiff, and you will therefore return your verdict in favor of the defendants."

To which ruling of the court the appellant properly saved the alleged error of the trial court complained of.

There are a number of errors assigned arising during the trial of this case that are of not sufficient importance to discuss at any length, for if the charge of the court was properly given, it would dispose of the case, and, on the contrary, if such charge should not have been given, we would be compelled to remand, and the other questions would perhaps not arise on another trial.

Appellant, on the 4th of January, 1916, was indebted to Robert E. Goree in the sum of $7,603, and to the Corpus Christi National Bank in the sum of $1,975. The first debt, secured by deed of trust on the property, had matured, and the second would soon mature, both secured on the gin property. Foreclosure was being had on the larger debt, and appellant was being urged to pay said sum of money. An agreement in writing was made by the parties (the said appellant, Goree and the bank, appellees), providing for appellant to convey the title to the property to a trustee for the purpose of forming a corporation to take over the property and operate it, so that stock could be issued to Goree and the bank, and thereby cancel appellant's indebtedness, and that appellant would be given an option assertable within a certain period of time to purchase stock in the corporation, and in the meanwhile would at the pleasure of the directors be employed, as he was employed thereafter, as manager, at a salary of $60 per month. Appellant duly transferred the property to L. C. Wells. trustee, the consideration being the cancellation of his said indebtedness, his employment as manager at the will of the directors, at a stipulated sum, and the option to acquire stock at a stipulated price. A corporation was thereupon duly formed in the name of "the Trott Gin Company," and stock recited was issued for the payment of the gin property and payment of appellant's said debts. The trustee duly conveyed the title to all the property to the corporation. It was organized and stock issued and delivered, and it was operated as a corporation, with appellant managing the same, to whom a salary was duly paid by the corporation for a stated period of time.

[1] In 1917 appellant did not take advantage of his option and right to purchase stock in accordance with his agreement. His right thereto was therefore forfeited. The terms of the option, as expressed in the agreement, were:

"The first party, in consideration of the transfer of said property to them, hereby agrees to give said second party an option to purchase said stock in said gin plant upon the

following terms, to wit: One-third of the amount representing the debts due to the first party by the second party to be payable on 1st of January, 1917; one-third on 1st of January, 1918, and one-third on 1st day of January, 1919. The failure to pay any of said installments when due will void the option herein given to the second party by the first party to purchase stock owned by them in said plant. The said amount representing the amount due the first party to bear interest from January 1, 1916, at the rate of six per cent. per annum, payable annually on each installment herein agreed upon, and failure to pay said interest when due, to cancel and render null and void the option of said second party to purchase said plant. Second party further agrees to pay all insurance premiums paid by the first party on the insurance carried on said plant at the maturity of said installments herein provided, with interest thereon at the rate of six per cent. per annum from the time of the payment of said insurance premiums, and failure to pay said insurance shall render null and void the option to purchase said stock owned by first party in said gin company."

The terms of the agreement for the employment and discharge of appellant are as follows:

"The first party agrees that the said second party will be employed to manage said gin during the life of this contract at a salary of $60 a month; said employment conditioned upon the faithful performance of his duties as manager of said gin plant. This contract of employment depending upon the judgment of the board of directors of said corporation, and to be determined at the will of said board of directors."

The Trott Gin Company paid taxes and insurance on the property, and paid appellant's salary until he sold his home in Corpus Christi, in the fall of 1916, and moved to Kendall county, but was paid as manager of the gin until he was removed. The Trott Gin Company, the corporation, controlled the gin in 1916, and ginned cotton with it in 1917.

Appellant was discharged by the corporation, in pursuance with their discretion, as the agreement provided, "on account of the provisions which provide for the forfeiture of the contract in the event you fail to pay the taxes or insurance, the contract is void." Appellant never paid, or offered to pay, any money to purchase stock, and as late as 1918, after the company built its new plant, he was offered the new stock, if he would pay therefor, according to his option.

[2] This suit was predicated entirely upon a purely legal right. It nowhere sets up or discloses a case for equitable relief. He does not seek to set aside his contract or the charter issued in pursuance with his agreements. He does not offer to pay off any of his indebtedness, or the moneys he had secured by deed of trust upon the identical property in process of foreclosure at the very time he secured the delay and extension by these new agreements. He stands strictly upon a legal alleged right to recover damages for an alleged conversion or the recovery of this property, and as he has pleaded his case, so we must consider it, for we cannot go beyond that. Shall we apply the familiar maxim here and say, "As you have bound yourself, so must you stand bound"?

Appellant has no legal title to that property, for he aided the parties to go to the state of Texas and secure a charter from it, upon a deed from him to L. C. Wells, reciting, among other things:

"* * * And the further consideration of the cancellation of the balance due on a mortgage on said plant due to Robert E. Goree, of Harris county, Texas, amounting to $7,603.00, and also of the cancellation of an indebtedness due the Corpus Christi National Bank, represented by a second lien, inferior to the lien of said Goree, on said plant, amounting to $1,975.00, do hereby bargain, sell, assign, transfer and convey to L. C. Wells, trustee, the following described property:

"The entire gin plant and system, owned by me located on, or near, the right of way of the Texas-Mexican Railway Company, in the town of Corpus Christi, Texas, and being the gin plant and system operated in the said town of Corpus Christi, Texas, by me, consisting, among all other things, of gin house, engine house, boilers, engine, seed house, office, all gin stands therein contained, scales, presses, and all other fixtures, tools, machinery and equipment of whatsoever nature belonging thereto, together with all my rights in and under a lease agreement with the Texas Mexican Railway Company wherein they have leased to me the ground on which said plant is located."

Upon which an affidavit was presented to the Secretary of State:

"That the full amount of the capital stock of said company has been in good faith subscribed, and $10,000 thereof paid in; that the following are the names and post office addresses of the parties subscribing to the capital stock:

| Name. | Post Office Address. |
|---|---|
| Joe Hirsch, | Corpus Christi, Texas. |
| L. C. Wells, | Corpus Christi, Texas. |
| Robert E. Goree, | Houston, Texas. |

"That the amount subscribed by each and the amount paid in by each is as follows:

| Name. | Amount Subscribed. | Amount Paid. |
|---|---|---|
| Joe Hirsch, | 10 shares. | $1,000.00 |
| L. C. Wells, | 10 shares. | 1,000.00 |
| Robert E. Goree, | 80 shares. | 8,000.00 |

"That the above subscriptions were paid as follows: The transfer by bill of sale, of that piece or parcel of property known as the Trott gin, formerly owned by C. H. Trott, being the entire gin plant and system located on or near the right of way of the Texas & Mexican Railway Company, in the town of Corpus Christi, Tex., and being the gin plant and system in said town of Corpus Christi, Tex., operated by C. H. Trott, consisting, among other things, of gin, house, engine house, boilers, engines, seed house, office, eight gin stands, scales, presses and all other fixtures, tools, machinery and equipment of whatsoever nature belonging thereto insured for $9,500 that there are no liens on said property. L. C. Wells. Robert E. Goree. Joe Hirsch."

[3] If the contention of appellant is true, then that charter was illegally obtained. But, as said, in the state of the pleadings and issues, that question cannot be gone into except as it is consistent with the issues, for no right or title is pleaded or shown in the appellant under the evidence to recover the property as such or damages for its alleged conversion, for whatever title he had passed out of him by his legal conveyance to Wells, the trustee. Cocke v. T. & N. O. R. R. Co., 46 Tex. Civ. App. 368, 103 S. W. 409, in which case the court said:

"The other ground urged by defendants in error in support of the judgment should, we think, be sustained. The sale by plaintiff in error to Williams divested him of all claim or right in the property and his possession during the two years that Williams held title under this deed could not have been under a claim of title or ownership in himself, and there is no evidence that he was holding for and under Williams, nor any testimony that Williams had any possession during said time which would inure to plaintiff in error's benefit under his subsequent purchase from Williams."

This corporation was legally formed, and that, too, with the aid of appellant, and acquired all the legal title to his property, and used and operated it under said title papers.

We have read all the cases cited by appellant. They support his theory as to his right in a proper case of conversion to sue as he has done, but the record presents no such case here as would justify such a suit. We agree with what Judge Pleasants says in the case of Espey v. Boone et al., 33 Tex. Civ. App. 84, 75 S. W. 571, cited by appellant:

"Appellee contends that plaintiff under the facts alleged in the petition could only sue for the land, and is not entitled to recover damages for its conversion by appellants, and in support of his contention cites Willis v. Morris, 66 Tex. 628. There is no merit in the contention, and it finds no support in the authority cited. That case announces the well-established rule that when the owner of real estate is dispossessed by a trespasser, he cannot abandon his claim to the property and sue for its value, but must sue to recover the property. It is manifest that this rule has no application to a case in which the plaintiff has been deprived of his title to land by the wrongful and fraudulent act of the defendant. It is well settled that in such case the person injured may sue for the value of the property of which he has been deprived. Phillips v. Herndon, 14 S. W. Rep. 857; Boothe v. Feist, 80 Texas, 141, 15 S. W. Rep. 799; Boothe v. Feist, 19 S. W. Rep. 398."

[4] It is well settled by authority that the ownership of stock, yea, all the stock, in a corporation does not pass either the legal or equitable title to corporate property. Gulf, Colorado Ry. v. Morris, 67 Tex. 692, 4 S. W. 156; Ring v. Neale, 114 Mass. 111, 19

Am. Rep. 316; 14 C. J. 384, 389; Thayer v. Wathen Co., 17 Tex. Civ. App. 391, 44 S. W. 906; National Bank v. Commonwealth, 9 Wall. 359, 19 L. Ed. 701; Waco Nat. Bank v. Rogers, 51 Tex. 606; People's National Bank v. Board of Commissioners (Okl. Sup.) 103 Pac. 684; Parker v. Bethel Hotel, 96 Tenn. 252, 34 S. W. 214, 31 L. R. A. 706; Humphreys v. McKissock, 140 U. S. 312, 11 Sup. Ct. 779, 35 L. Ed. 473; Presnall v. Stockyards Nat. Bank (Tex. Civ. App.) 151 S. W. 876; Puritan Coal Mine Co. v. Penn. Ry. Co., 237 Pa. 420, 85 Atl. 426, Ann. Cas. 1914E, 37; Smith v. Hurd, 53 Mass. (12 Metc.) 371, 46 Am. Dec. 690.

[5, 6] Now, again referring to appellant's contention as to title or the right to recover in the manner he has sued, he must prove title under the allegations made. Willis & Bro. v. Hudson, 63 Tex. 678; Hudson v. Willis Bros., 65 Tex. 701; Hoffman v. Building Association, 2 Tex. Civ. App. 690, 22 S. W. 155; Downtain v. Ray, 31 Tex. Civ. App. 298, 71 S. W. 758.

In Texas, trover, trespass, ejectment, as well as all fictitious forms of action and actions required at common law have been abolished. The plaintiff is required only to state his cause of action and the nature of the case sufficiently upon which he seeks to recover, and a general denial puts him upon proof of every affirmative allegation necessary to maintain his suit. Willis & Bro. v. Hudson, supra. The defendant therefore is called upon to look only to the pleading, to see what he is required to meet by pleadings and proof. So, in looking to this pleading appellant was required to prove his ownership or fail.

"All exceptional facts must be pleaded (McNeil v. Moore, 7 Tex. Civ. App. 588, 27 S. W. 163); as fraud (Ohio Cultivator Co. v. People, etc., Bank, 22 Tex. Civ. App. 655, 55 S. W. 765); and resulting trusts.

"To ingraft a trust, special facts must be set up in the petition (Packard v. De Miranda [Tex. Civ. App.] 146 S. W. 211) for a general allegation of ownership will not let in an equity (Groesbeeck v. Crow, 85 Tex. 200, 20 S. W. 49).

"The same rule applies to duress (Sanborn v. Bush, 41 Tex. Civ. App. 24, 91 S. W. 883); deceit (Matthews v. Moses, 21 Tex. Civ. App. 494, 52 S. W. 113); subrogation (Wilkin v. Geo. W. Owens & Bros. 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867); mistake (Matador Land & Cattle Co. v. State [Tex. Civ. App.] 54 S. W. 256); and redemption (Parks v. Worthington, 39 Tex. Civ. App. 421, 87 S. W. 721)."

[7, 8] The written instruments constituted the contract, and vested on their face the title in appellees, and could not be varied or contradicted by parol testimony to the contrary in the absence of a proper pleading. The controlling idea in these instruments was to organize a corporation to take over the title to this property and discharge the

appellant's indebtedness, and to allow him the privilege and right to acquire shares of the stock of the corporation upon the specified terms. Harrison v. Vines, 46 Tex. 21. The legal and lawful effect of these instruments, gathered from the whole, must be given, rather than an illegal one. Rockmore v. Davenport, 14 Tex. 604, 65 Am. Dec. 132; Foard County v. Sandifer, 105 Tex. 425, 151 S. W. 523; Hancock v. Butler, 21 Tex. 806.

[9, 10] We cannot give our sanction to appellant's contention that the facts, should we hold that the pleading justified any such contention, showed that the proper construction to be given to the instruments constituted a mortgage. In this state, it is true, the legal title remains in the mortgagor, whether it be a mortgage pure and simple or a deed of trust. Fuller v. O'Neil, 69 Tex. 352; 6 S. W. 181, 5 Am. St. Rep. 59; Keller v. Kirby, 34 Tex. Civ. App. 404, 79 S. W. 82; Soell v. Haden, 85 Tex. 189, 19 S. W. 1087. Yet there is no pleading or evidence to justify any such construction.

These instruments were executed to cancel and satisfy the debts, not to continue them. There is no element of defeasance in them. Appellant passed the title to cancel his own obligations, and reserved an option only to take stock by paying for it, not to become reinvested with the title, but to secure the benefits as a shareholder in the corporation he helped to create. Such are the recitals in the instruments to which we must give effect. This was a valid corporation because it was issued for "property actually received," duly organized and operated by the parties themselves. The contract was executed. The rights of appellant seem largely to be controlled by the case of San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201–209, 105 S. W. 486, 114 S. W. 1174, to recover the stock by paying for it, and not for relief upon a tort or for conversion.

We cannot agree that the bill of sale can be construed, apart from its contemporaneous instruments in writing, as a mortgage securing the indebtedness, because giving the legal effect to the instruments shows a satisfaction of the debts, the vesting of title in the corporation, and the separate right reserved by appellant therein of acquiring shares of stock. He cannot, in the absence of a proper pleading and parties, for one moment be heard to contradict his own solemn written instrument to the contrary.

[11] Suppose we should adopt appellant's theory that the conveyance made by appellant, conveying the gin property, amounted to a mortgage, and not an absolute transfer of the property, such a construction would destroy the corporation, annul and set aside all the written instruments, the legal effect of which on their face, construed together, showed the vesting of title in the corpora-

tion. To hold they were intended to be a mortgage for the security of a debt would be to say the charter of the corporation was obtained from the state upon fraud and fraudulent misrepresentations. It would be subject, therefore, under appellant's contention, to two constructions, one of which would be legal and the other illegal. In such a case, we must give the transaction that construction that upholds the legal effect. Hancock v. Butler, 21 Tex. 805.

[12] If the contention of appellant be true, that the intention of the parties was to make these instruments merely security for his indebtedness to the several parties, then there is no pleading to let in any such affirmative claim. Parties must come into court with clean hands, and in seeking equitable relief should do, or offer to do, equity. Appellants sue on a strictly legal claim, sounding in damages for an alleged tort, and in the alternative for the possession of the property, and nowhere recognizes his indebtedness or offers to do equity, or indicates his willingness to discharge the same.

The other assignments raise questions that arose on the trial that do not affect the result of this case, which we have considered, and they are overruled.

The court did not err in giving the charge complained of, and the judgment is affirmed.