IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 3, 2008

Charles R. Fulbruge III
Clerk

No. 07-40385

_____

In the Matter of: JAMES H MAPLES; VIRGINIA KATHLEEN MAPLES

Debtors

------------------------

JAMES H MAPLES; VIRGINIA KATHLEEN MAPLES; TEXAS STATE
BANK

Appellees

v.

JOHNNY PARTAIN

Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before REAVLEY, JOLLY, and GARZA, Circuit Judges.

PER CURIAM:

The opinion issued in this case on May 30, 2008, is withdrawn and this
revised opinion is substituted therefor.

Appellant Johnny Partain, proceeding pro se, raises twenty-seven issues
in this appeal from the district court's affirmance of the bankruptcy court's final
judgment in this adversary proceeding.  After considering the briefs and

reviewing the record, we find no reversible error in the district court's judgment. The judgment of the district court is therefore AFFIRMED.[1]

The dissent raises two issues and, as to these issues, enunciates general principles. We do not so much disagree with the statements of general principles as with the certainty of the dissent that they have a precise fit in this case. This case is poorly briefed, and the record is incomplete. The majority is therefore unwilling to say anything other than that the district court committed no reversible error in affirming the bankruptcy court. We would observe that, in our opinion, it is not pellucid that Mr. Partain's charge of conspiracy between Texas State Bank ("TSB") and the debtor and/or the debtor's estate to deprive him of his counsel does not allege and relate to liability on the part of the debtor's estate in connection with this adversary proceeding. Thus, based on what is before us, we will not say flatly that the bankruptcy court had no jurisdiction to address this claim. The claim, in any event, is patently meritless. Second, it is uncertain whether, at some point, the bankruptcy court may have acquired jurisdiction over the assets of the corporation given that the stock of the corporation is now solely controlled by the bankruptcy trustee, who apparently had control over the assets at all the relevant times herein. The record and law are clear, however, that Mr. Partain never had any interest in these assets at any time relevant to these proceedings. We are therefore satisfied simply to AFFIRM.

AFFIRMED.

---

[1] This opinion is published on the request of the dissenting judge.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I find it ironic that the majority states that my dissenting opinion merely "enunciates general principles," while resting its own decision (which includes no citation to legal authority) on the fact that the majority is simply "uncertain" as to the "precise fit" of these principles to the case at hand. These "general principles," which the majority fails to enunciate, are nothing other than the foundational principles of bankruptcy jurisdiction. While I admit that the briefing is poor, this difficulty does not authorize the majority's abdication of any meaningful review of the jurisdictional issues raised below. Therefore, I concur in the majority's affirmance except as to the following.

First, the bankruptcy court did not have subject matter jurisdiction over Partain's counterclaim against Texas State Bank ("TSB") in which Partain alleged that TSB intentionally created a conflict of interest with Partain's attorney in a prior case. The law is certainly pellucid))even if the majority believes a claim to be "patently meritless"))that the bankruptcy court must have subject-matter jurisdiction before reaching the merits of a claim. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "[B]ankruptcy courts are not courts of general jurisdiction and do not have jurisdiction over an action between non-debtors . . . unless that action is 'related to' the bankruptcy." In re Prescription Home Health Care, Inc., 316 F.3d 542, 547 (5th Cir. 2002); see 28 U.S.C. § 1334(b). "[A]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate." In re Walker, 51 F.3d 562, 569 (5th Cir. 1995) (internal quotation marks omitted). Any liability that might arise from this claim would be borne individually by TSB. Nothing in the record suggests that TSB's potential exposure would impact the Mapleses' bankruptcy estate. Because this claim between third parties has no conceivable effect on the bankruptcy estate,

the bankruptcy court improperly resolved this claim over which it lacked subject-matter jurisdiction.  See In re Zale Corp., 62 F.3d 746, 753 (5th Cir. 1995).

Secondly, the bankruptcy court exceeded its statutory grant of jurisdiction over property when it placed Global Limo's corporate assets into the individual bankruptcy estate of the Mapleses.  The bankruptcy court's jurisdiction over property is limited to "property, wherever located, of the debtor as of the commencement of such case, and [] property of the estate."  28 U.S.C. § 1334(e)(1).  The Mapleses' property interests, unless otherwise dictated by the bankruptcy code, are determined by reference to state law.  See Butner v. United States, 440 U.S. 48, 54-55 (1979).  Even though the Mapleses were sole shareholders of Global Limo, they never owned Global Limo's corporate assets.  See Trott v. Flato, 244 S.W. 1085, 1088 (Tex. Civ. App. 1922) (collecting cases).  Despite forfeiture of its charter, the corporation still existed at the time the Mapleses filed for bankruptcy.  See Humble Oil & Ref. Co. v. Blankenburg, 235 S.W.2d 891, 893-94 (Tex. 1951).  The forfeiture of Global Limo's corporate charter did not provide the Mapleses with any new ownership interest in Global Limo's property.  As such, the Mapleses were never more than shareholders of Global Limo; and they did not have a property interest in Global Limo's corporate assets at the time they filed for bankruptcy.[1]  Nor could the bankruptcy court have placed corporate assets into the Mapleses' estate through an avoided preference under 11 U.S.C. § 547(b).  Any transfer of Global Limo's assets was not a transfer of a property interest held by the Mapleses.  See In re Kelton Motors, Inc., 97 F.3d 22, 25 (2d Cir. 1996) (Under § 547(b), a trustee "may only seek those legal or equitable interests that the debtor would have held at

---

[1] The only argument raised by the Mapleses to address this issue on appeal is that they became "beneficial owners" of Global Limo's corporate assets when the charter was forfeited.  As noted above, the forfeiture of Global Limo's charter did not change the Mapleses' ownership interest in Global Limo's assets.  Courts and leading treatises have recognized that a debtor's equitable or beneficial interest as a shareholder is insufficient to allow corporate assets to be placed in the debtor's bankruptcy estate. See Fowler v. Shadel, 400 F.3d 1016, 1018-19 (7th Cir. 2005) (collecting sources).

the time of the petition but for the debtor's transfer of those interests."). Accordingly, Global Limo's corporate assets were neither property of the Mapleses at the time of filing nor property of the estate. To the extent that it placed Global Limo's corporate assets into the Mapleses' bankruptcy estate, the bankruptcy court exceeded the limits of its jurisdiction under § 1334(e)(1).

For the foregoing reasons, I would vacate the district court's judgment to the extent the bankruptcy court lacked jurisdiction under § 1334(b) and § 1334(e)(1). As such, I respectfully dissent from the majority's decision to affirm the district court judgment in its entirety.